# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      16-48-SDD-EWD

REGINALD WILLIAMS

## <u>RULING</u>

This matter is before the Court on the *Motion to Suppress*[1] filed by the Defendant, Reginald Williams ("Defendant").  The United States ("the Government") has filed an *Opposition*[2] to this motion.  The Court held an evidentiary hearing on this motion on September 15, 2016, took the matter under advisement, and allowed the parties to file post-hearing briefs.[3]  The Court has considered the arguments of the parties, the testimony and evidence presented at the hearing, and the law as applied to the facts of this case.  For the reasons set forth below, the Defendant's motion shall be denied.

## I.    FACTUAL BACKGROUND[4]

The Defendant was indicted on May 18, 2016 for possession with intent to distribute methamphetamine (Count 1); possession of a firearm by a convicted felon (Count 2); possession of a firearm in furtherance of a drug trafficking crime (Count 3); and possession of marijuana (Count 4).  The Defendant has filed a motion to suppress all evidence resulting from his traffic stop and arrest on October 14, 2015.

---

[1] Rec. Doc. No. 16.
[2] Rec. Doc. No. 21.
[3] *See* Rec. Doc. Nos. 31 & 32.
[4] The factual background was derived from the Parties' briefs and testimony presented at the hearing.
35571

In the evening of October 14, 2015, Baton Rouge City Police Officers Nicholas Collins and Jessie Barcelona were performing a routine patrol in their unit of Eden Park neighborhood in Baton Rouge, Louisiana.   As the officers turned onto North 42nd Street, they observed a car stopped in the middle of the road on Pitcher Street.  The Defendant was the sole occupant and driver of this vehicle.

The car remained stopped as the officers approached, stopping at two stop signs, before the officers observed the Defendant backing up several car lengths and into the driveway of a home in the 4200 block of Pitcher Street.  The officers claim they parked their cars on the street and walked toward the Defendant with flashlights.  Neither officer had activated his blue emergency lights or siren.  Officer Barcelona approached the passenger side of the car, while Cpl. Collins approached the driver's side.  Cpl. Collins claims that, as he approached the vehicle, he observed the Defendant reaching under the driver's seat.  Cpl. Collins drew his weapon and instructed the Defendant to raise his hands multiple times before the Defendant complied.  As the Defendant opened the car door, Cpl. Collins observed the butt of a pistol sticking out from under the driver's seat, within reach of the Defendant.  Cpl. Collins also noticed a strong odor of marijuana when the door opened.

Cpl. Collins then handcuffed the Defendant and advised him of his *Miranda* rights. Cpl. Collins performed an on-site computer search and discovered the gun was reported stolen and that the Defendant was a convicted felon.  Cpl. Collins also discovered that the gun was loaded.  The Defendant was placed under arrest.  The Defendant told officers he was visiting a friend who lived at the house where he parked.  Cpl. Collins knocked on the door and spoke to Briona Tate, who denied knowing the Defendant and stated that

35571

the police could not leave the car in her driveway.    The officers had the Defendant's vehicle towed.

Defendant was searched incident to arrest, and the officers discovered approximately two grams of marijuana and over 500 pills in a bag in the Defendant's underwear.    Subsequent chemical analysis revealed that the pills contained methamphetamine.

## II.    PARTIES' ARGUMENTS

Defendant contends that all evidence seized as a result of his arrest should be suppressed because the officers did not have reasonable suspicion to initiate a traffic stop.   The Defendant argues that Cpl. Collins lacked "the most bare bones objective justification"[5] to stop him because he was not committing any criminal violation, federal, state, or municipal, by backing his vehicle into the driveway of a residence.   The Defendant challenges the claim by the officers that his vehicle was obstructing the free flow of traffic for any lengthy period of time.

The Government contends that Defendant's motion should be denied for several reasons.  First, the initial encounter was based on a reasonable, articulable suspicion that the Defendant was obstructing public passages in violation of Louisiana Criminal Code La R.S. 14:100.1.   The Government also contends that the officers' testimony at the hearing explained how long they observed the Defendant's car stopped in the road and described how Defendant's evasive reactions as they approached supported a reasonable suspicion that a traffic violation had occurred and justified an investigatory

---

[5] Rec. Doc. No. 17, p.2, ¶3.

35571

stop.  The Government also offers the alternative argument that, if the officers did not conduct a traffic stop, they nevertheless legally approached the Defendant to ask questions which is allowed by the law.  The Government contends the officers' testimony likewise supports an alternative finding that the encounter was not a seizure for Fourth Amendment purposes until the officers observed the Defendant reaching under the driver's seat.  Once the officers suspected the Defendant had a weapon, the officer drew their own weapons, and the arrest ensued.

## III.   LAW & ANALYSIS

### A.  Motion to Suppress

Generally, "[t]he proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence**,** that the evidence obtained was in violation of his Fourth Amendment rights.[6]  Conversely, at a suppression hearing, the Government must prove, by a preponderance of the evidence, that the challenged evidence was lawfully obtained.[7]

### B.  *Terry* Traffic Stops

The legality of traffic stops are analyzed for Fourth Amendment purposes under the standard articulated in *Terry v. Ohio*.[8]  "This standard is a two-tiered reasonable suspicion inquiry: (1) whether the officer's action was justified at its inception, and (2) whether the search or seizure was reasonably related in scope to the circumstances that justified the stop in the first place."[9]  "In addition, 'the investigative methods employed

---

[6] *United States v. Kelley,* 981 F.2d 1464, 1467 (5th Cir.1993) (quoting *United States v. Smith*, 978 F.2d 171, 176 (5th Cir.1992)).

[7] *United States v. Valenzuela*, 716 F.Supp.2d 494, 500 (S.D. Tex. 2007) (citing *United States v. Matlock*, 415 U.S. 164, 178 n. 14 (1974)).

[8] 392 U.S. 1 (1968).

[9] *United States v. Valadez*, 267 F.3d 395, 398 (5th Cir.2001) (citing *Terry*, 392 U.S. at 19–20).

35571

should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.'"[10] "However, once an officer's suspicions have been verified or dispelled, the detention must end unless there is additional articulable, reasonable suspicion."[11] "'At that point, continuation of the detention is no longer supported by the facts that justified its initiation.'"[12]

Considering the first prong of the *Terry* analysis, the Fifth Circuit has held that, "for a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle."[13] The Supreme Court has instructed that, in making a reasonable suspicion inquiry, a court "must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."[14] The Fifth Circuit has held that "reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure."[15]

In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other.[16] In scrutinizing the officer's basis for

---

[10] *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983).
[11] *Id.*
[12] *Id.* (quoting *United States v. Shabazz*, 993 F.2d 431, 436 (5th Cir.1993)).
[13] *U.S. v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005).
[14] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
[15] *Lopez–Moreno*, at 430.
[16] *Arvizu*, 534 U.S. at 274.

35571

suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice.[17]  It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.[18]

In a recent opinion, the Fifth Circuit discussed the issue of whether a traffic stop is justified at its inception.[19]  The Fifth Circuit noted that, "if the alleged traffic violation forming the basis of the stop was not a violation of state law, there is no objective basis for justifying the stop."[20]  The Fifth Circuit articulated as follows:

> The government bears the burden of proving that the stop was constitutional when, as here, the stop and search were conducted without a warrant. Thus, the suppression hearing provided the government the opportunity and obligation to present evidence establishing the validity of the traffic stop.[21]

In this case, the Defendant contends that he was backing into a driveway, implicitly arguing that he was not stopped long enough on the road to obstruct a public passageway in violation of the law.  The Government contends that the officers' uncontroverted testimony established the length of time that the Defendant's vehicle remained unmoved in the street; thus, pursuant to La. R.S. 14:100.1, the officers had reasonable suspicion to believe that the Defendant was obstructing a public passageway – a traffic violation.

The Government cites *State of Louisiana v. Kinard*,[22] wherein the state appellate court upheld the right of officers to stop and interrogate a defendant for this same traffic violation.  The Court held:

> In this case, the deputy observed defendant's vehicle parked in the middle of the street and explained that he would have had to go around the vehicle to continue driving on that street. He testified he stopped to investigate

---

[17] *Terry*, 392 U.S. at 27.
[18] *Arvizu*, 534 U.S. at 274.
[19] *U.S. v. Raney*, 633 F.3d 385 (5th Cir. 2011).
[20] *Id.* at 390.
[21] *Raney*, 633 F.3d at 392.
[22] 12-446 (La. App. 5 Cir. 11/27/12), 105 So.3d 974.
35571

because the vehicle was obstructing traffic. Obstructing traffic is prohibited under La. R.S. 14:100.1; thus, Deputy Carroll had probable cause to believe defendant had committed a traffic violation, which justified the investigatory stop. The fact the deputy did not issue a traffic citation is irrelevant to the constitutionality of the stop. *State v. Martin*, 11–160 (La.App. 5 Cir. 12/28/11), 83 So.3d 230, 238.

Once an officer has lawfully stopped a vehicle for a traffic violation, he is authorized to order the driver out of the vehicle pending completion of the stop. *State v. Smith*, 07–815 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825, *writ denied*, 08–927 (La.11/14/08), 996 So.2d 1088. Thus, Deputy Carroll had the authority to order defendant to exit the vehicle.

When defendant exited his vehicle, the deputy observed a gun fall on the side of the seat. Upon seeing the gun, Deputy Carroll handcuffed defendant and placed him at the front of the car.[23]

The same result was reached in *State of Louisiana v. Barnard*.[24]  The *Barnard*

court upheld a traffic stop based on this same traffic violation:

In Louisiana, a person is prohibited from operating or driving a motor vehicle upon the highways at such a slow speed as to impede the normal and reasonable movement of traffic except under certain special circumstances which may require lower speed. La. R.S. 32:64(B). Likewise, Louisiana law prohibits a person from willfully obstructing the free, convenient and normal use of any public street, road or highway by impeding, hindering, stifling, retarding or restraining traffic or passage thereon. La. R.S. 14:100.1. Both crimes are misdemeanors. La. R.S. 32:57.

Officer Dean testified that he saw Barnard stop and obstruct public passage. This is sufficient to establish probable cause for a traffic violation. Barnard nevertheless argues that since no traffic was actually impeded, no crime was committed. Such argument concerning the interpretation of the criminal statute, however, even if correct, does not detract from the existence of probable cause for arrest. While we do not interpret the traffic statute so narrowly, the evidence indicates that Officer Dean had probable cause to make the traffic stop in this case.

Despite the relatively minor nature of the offense, such a traffic violation gave Officer Dean an objectively reasonable basis for stopping Barnard's

---

[23] *Id.* at pp. 978-79.
[24] 37,032 (La. App. 2 Cir. 5/14/03), 847 So.2d 99.
35571

vehicle for the purpose of issuing a citation or instructing or warning him to comply with the law.[25]

In this case, the Court finds by a preponderance of the evidence that the officers had a reasonable suspicion that a traffic violation of La. R.S. 14:100.1 was committed by the Defendant.  The Defendant maintains that the Government produced no evidence that he had the intent to block the free flow of passage.  However, the testimony of Officers Barcelona and Collins was consistent that the Defendant's vehicle obstructed their lane of passage for 20-30 seconds.  Officer Barcelona testified:  "I would have had to drive around the [Defendant's] vehicle if I continued northbound on 42nd Street."[26]  Barcelona continued:  "He was blocking 42nd Street northbound, but he was also, it appeared if he was in the middle of Pitcher Street at that time."[27]  When asked how he could tell that the car was stopped, Barcelona testified:

> Because, like I said, we were two blocks away.  As I turned northbound and proceeded through, we actually came to a stop sign at the first street … I was proceeding northbound.  As I came to each stop sign I came to a stop and then continued forward.  The vehicle still hadn't moved.  I continued to Billops, came to a stop, the vehicle still hadn't moved.  So at that point in time it had, you know, probably 20 to 30 seconds had elapsed and the vehicle had not moved.[28]

Cpl. Collins' testimony was consistent with Officer Barcelona's account:

> We were paroling [sic] the neighborhood. We made a northbound turn off of Odell Street onto North 42nd. And as I was behind Corporal Barcelona. And I could just look up as I was scanning. It was dark and you could see headlights and a car in the roadway approximately three streets up till we came to Provost Street, made a stop at the stop sign, continued up to the next street, I just observed that the car was still there as we came to the

---

[25] *Id.* at 102.
[26] Transcript of September 15, 2016 Hearing, Rec. Doc. No. 30, p. 13, lines 4-5.
[27] *Id.* at lines 7-9.
[28] *Id.* at p. 13, lines 22-24; p. 14, lines 5-10.
35571

next stop sign. And as we stopped at that stop sign and continued, the car was still sitting in the roadway.[29]

Cpl. Collins further testified that the Defendant's vehicle "was blocking North 42nd, and it was blocking Pitcher Street for sure, but it was still just sitting in the roadway."[30]  When asked how he knew how long the vehicle was stopped in the roadway, Cpl. Collins responded:  "At least 20 seconds ... Because that took us the time to come off of Odell to stop at all the stop signs and clear the intersections and make it all the way up there."[31] This testimony was uncontroverted by the Defendant.

The Defendant argues there is no evidence that any traffic was in the area throughout the time of the incident.  However, the law does not require that there be traffic, only that there is an obstruction of the roadway.  Moreover, the officers testified that the Defendant's car obstructed their passage through the roadway.   The Court is also unpersuaded that the officers' lack of knowledge of the status of Defendant's taillights undermine their reasonable suspicion of a traffic violation.  Even if the Defendant intended to, or was in the process of, backing into the driveway by the time the officers reached him, the evidence remains that his vehicle was obstructing the roadway for a period of 20-30 seconds without moving, and the testimony was that he only began backing up when he noticed law enforcement approach.  Barcelona testified:  "At this point due to the way that he had backed up and quickly turned into the driveway, I thought that he was trying to avoid police contact."[32]  Cpl. Collins testified that, "as I put the car in park to exit the vehicle and got to get out, I observed the vehicle then just reverse in the middle of the

---

[29] *Id.* at p. 51, lines 2-11.
[30] *Id.* at p. 53, lines 15-17.
[31] *Id.* at p. 55, lines 10-14.
[32] *Id.* at p. 18, lines 12-14.
35571

roadway."[33]  Cpl. Collins further stated that, "[i]t wasn't tires squealing, but it was hurriedly for the purpose."[34]

Based on the uncontroverted testimony that the Defendant's vehicle was obstructing a roadway for 20-30 seconds, the Court finds that the officers had reasonable suspicion that a traffic violation had occurred, and the stop was justified at its inception.

### C. Prolonging the Stop

By a preponderance of the evidence, the Court also finds that the search and seizure was reasonably related to the scope of the stop.  It is settled Fifth Circuit law that an officer can lawfully continue a detention if he has a "reasonable suspicion supported by articulable facts that a crime has been or is being committed."[35]  "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain its occupants for a reasonable time while appropriately attempting to dispel this reasonable suspicion."[36]

The Supreme Court and Fifth Circuit have "emphasized that courts must allow law enforcement 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'"[37]  The Fifth Circuit noted that:

> …we do not presume to prescribe in the abstract the scope of questioning, investigative techniques, or length of permissible detention that may be undertaken following a valid traffic stop. The bounds of existing caselaw are clear, if fact-intensive: a traffic detention may last as long as is reasonably

---

[33] *Id.* at p. 54, lines 24-25; p. 55, lines 1.
[34] *Id.* at p. 56, lines 15-16.
[35] *U.S. v. Santiago*, 310 F.3d 336, 342 (5th Cir. 2002).
[36] *U.S. v. Pack*, 612 F.3d 341, 350 (5th Cir.2010) *opinion modified on denial of reh'g*, 622 F.3d 383 (5th Cir.2010) *cert. denied*, 131 S.Ct. 620, 178 L.Ed.2d 450 (U.S.2010) and *cert. denied*, 131 S.Ct. 620, 178 L.Ed.2d 450 (U.S.2010).
[37] *U.S v. Brigham*, 382 F.3d 500, 507 (5th Cir.2004) quoting *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002).
35571

necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion, supported by articulable facts within the officer's professional judgment, that emerges during the stop."[38]

The Defendant does not argue or challenge the prolonging of the stop – he simply challenges whether he should have been stopped at all.  The officers testified that, upon approaching the Defendant's vehicle, the officers observed the Defendant "leaning down and reaching under the driver's seat,"[39] and he continued to reach under the driver's seat despite Cpl. Collins repeated commands to put his hands up.  Cpl. Collins further testified that he was sure the Defendant heard his commands,[40] yet the Defendant "kept just reaching under the seat, and his head was down, and just reaching, his arm, right arm and shoulder were just going down under that seat, under the seat."[41]

Based on the Defendant's behavior and failure to immediately comply with the officers' orders, Cpl. Collins drew his weapon to ensure his safety.  Cpl. Collins testified that he suspected the Defendant "was either trying to hide something that he did not want me to see, or he was trying to pull a weapon or something to do damage."[42]  Once the Defendant exited the vehicle and complied with the officer's orders, Cpl. Collins holstered his weapon.[43]

Cpl. Collins testified that, when the Defendant exited the vehicle, he observed the butt end of a pistol sticking out from under the driver's seat which prompted Cpl. Collins to handcuff Defendant and advise him of his *Miranda* rights.[44]  Cpl. Collins ultimately

---

[38] *Id.* at 512.
[39] Transcript of September 15, 2016 Hearing, Rec. Doc. No. 30, p. 60, line 4.
[40] *Id.* at p. 60, lines 10-11 ("Yes, ma'am.  He looked up, looked directly at me and put his head back down.").
[41] *Id.*, lines 21-23.
[42] *Id.* at p. 61, lines 9-11.
[43] *Id.*, lines 20-25.
[44] *Id.* at p. 62, lines 14-16; 18-21.

35571

discovered that the firearm removed from Defendant's vehicle was stolen and loaded, and the Defendant is a convicted felon.[45]

Both officers also testified to the strong odor of marijuana emanating from the Defendant and his vehicle. Officer Barcelona testified that, as the Defendant was sitting in his patrol car, "a very strong odor of raw marijuana was coming now in my vehicle that wasn't there before. And the longer we sat there, the smell stayed, which didn't dissipate, which made me believe that he had something concealed on his person."[46] Barcelona asked the Defendant if he was concealing drugs; however, the Defendant refused to answer any questions.[47] Cpl. Collins testified that, when the Defendant's car door opened, he smelled a "strong odor of marijuana."[48] After conducting an inventory of the vehicle, Cpl. Collins discovered marijuana in the Defendant's vehicle.[49] Cpl. Collins testified that he again smelled a strong odor of marijuana when they arrived at the station upon the Defendant's exit from Officer Barcelona's car,[50] which prompted the officers to conduct a search of the Defendant's person in the bathroom of the police station.[51] This search yielded approximately two grams of marijuana and 550 dosage units of methamphetamine hidden in the front compartment of Defendant's underwear.[52] Upon this discovery, Cpl. Collins testified that the Defendant admitted to selling the drugs.[53]

---

[45] *Id.* at p. 64, lines 19-20; 22-24; p. 66, lines 9-10.
[46] *Id.* at p. 25, lines 14-18.
[47] *Id.*, lines 18-20.
[48] *Id.* at p. 66, line 21.
[49] *Id.* at p. 67, lines 1-2.
[50] *Id.*, lines 8-13.
[51] *Id.*, lines 16-17.
[52] *Id.*, lines 19-22.
[53] *Id.* at p. 68, lines 2-5.
35571

The Government contends the firearm seized from Defendant's vehicle was in plain view based on Cpl. Collins's testimony.  The plain view exception to a warrantless search allows police to seize items without a warrant where (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent"; and (4) the police had a lawful right of access to the item.[54]  Moreover, the Fifth Circuit has long held that the plain view doctrine applies to articles which can be seen through the door or window of an automobile.[55]

In *United States v. Guidry*,[56] a defendant's motion to suppress a firearm was denied where the gun was discovered in plain view during a valid traffic stop on the floorboard in front of the front passenger seat.  Similarly, in *United States v. Walls*,[57] evidence that a gun was found in the defendant's vehicle during a routine traffic stop was not suppressed at his trial for knowing possession of a firearm by a convicted felon.  The court held that the officer had a lawful reason to be standing near the defendant's vehicle after stopping him for running a red light.  Additionally, the gun was not seized pursuant to an improper search because it was in plain view at the time of the officer was standing near the vehicle. In *United States v. Craig*,[58] The Fifth Circuit also affirmed a district court's denial of a motion to suppress under similar facts, finding that the police officer had probable cause to arrest the defendant following a valid traffic stop, where the officer saw

[54] *United States v. Hafford*, No. 11-14-BAJ-CN, 2011 WL 2269161 at * 3, citing *U.S. v. Roberts*, 612 F.3d 306, 312 (5th Cir. 2010).
[55] *Id.*, citing *U.S. v. McDaniel*, 550 F.2d 214, 218 (5th Cir.1977).
[56] No. 6:13-cr-167-01, 2013 WL 5427973 at * 4 (W.D. La. Sep. 26, 2013).
[57] No. 08-83-JVP-DLD, 2009 WL 1883056 (M.D. La. June 30, 2009).
[58] No. 09-10647, 381 Fed. Appx. 459, 461 (5th Cir. 2010).
35571

the gun in plain view sticking out from under the driver's seat after the defendant exited the driver's seat.

The evidence that the butt of the firearm was easily seen sticking out from the under the driver's seat was not controverted by the Defendant at the hearing and not argued by the Defendant in his memoranda.   The Court finds that, considering the Defendant's suspicious movements and initial refusal to comply with the officer's commands to exit the vehicle and put his hands up, Cpl. Collins had reason to believe that the Defendant was armed.   This suspicion was then confirmed by the observation of the gun in plain view.   Furthermore, the drug evidence seized was incident to the Defendant's lawful arrest.[59]   None of the evidence seized as a result of this traffic stop was in violation of the Fourth Amendment.

## IV.    CONCLUSION

For the reasons set forth above, the Defendant's *Motion to Suppress*[60] is DENIED. This matter is hereby set for a jury trial to begin on November 30, 2016.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>November 1, 2016</u>.


_Shelly D. Dick_

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[59] The Court notes that the Defendant did not argue the legality of his arrest or the subsequent search of his person.
[60] Rec. Doc. No. 16.
35571